UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES


       - against -                            16 Cr. 521 (JSR)


ANDY GYAMFI,

          Defendant
-----------------------------------------------------X




### DEFENDANT'S MEMORANDUM OF LAW
### IN OPPOSITION TO
### THE GOVERNMENT'S MOTION IN LIMINE




Dated:  New York, New York
         January 21, 2019


                           Donald Yannella, Esq.
                           Karloff Commissiong, Esq.

                           *Attorneys for Andy Gyamfi*

**Cases**

Bourjaily v. United States, 483 U.S. 171 (1987) ............................................................................. 12

District of Columbia v. Clawans, 300 U.S. 617 (1937) .................................................................. 17

Huddleston v. United States, 485 U.S. 681 (1988) .......................................................................... 4

United States v. Bari, 750 F.2d 1169 (2d Cir.1984) ....................................................................... 17

United States v. Caracappa, 614 F.3d 30, 42-43 (2d Cir. 2010) .................................................... 17

United States v. Carneglia, 256 F.R.D. 384 (E.D.N.Y. 2009) ....................................................... 13

United States v. Harris, 733 F.2d 994 (2d Cir. 1984) ...................................................................... 4

United States v. Lopez, 271 F.3d 472 (3d Cir. 2001) ....................................................................... 7

United States v. McCallum, 585 F.3d 471, (2d Cir. 2009) ............................................................... 4

United States v. Pierre,781 F.2d 329 (2d Cir. 1986)....................................................................... 11

United States v. Salameh, 152 F.3d 88 (2d Cir. 1998) ................................................................... 10

United States v. Sappe, 898 F.2d 878 (2d Cir. 1990) ...................................................................... 4

United States v. Tellier, 83 F.3d 578 (2d Cir.1996) ....................................................................... 12

United States v. Tracy, 12 F.3d 1186 (2d Cir.1993)....................................................................... 12

United States v. Velazquez, 246 F.3d 204 (2d Cir. 2001) ................................................................ 7

## PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the Government's motion *in limine* (ECF # 93), dated January 7, 2019.  Andy Gyamfi is charged in counts 1 and 2 with Hobbs Act Robbery, in violation of 18 U.S.C. Sections 1951(b)(2) and (3); count 3 with aiding and abetting the use, carrying and discharge of a firearm, in violation of 18 U.S.C. Section 924(c)(1(A)(iii) and 2; and count 4 with aiding and abetting the killing of another, in violation 18 U.S.C. 924(j) and (2).

The instant indictment grew out of an NYPD investigation into a failed robbery, on April 28, 2016, resulting in the shooting death of Carlos Vargas in an apartment located at 2466 Marion Avenue in the Bronx.  Law enforcement discovered that Vargas and others operated a small-scale marijuana business from the apartment.

Dwaine Collymore, the lead defendant, was indicted on August 3, 2016.  While preparing to try Collymore, the government indicted Gyamfi for allegedly participating in the crimes.  The government's case against Gyamfi relies on: (1) phone records and cooperator testimony regarding communications between Gyamfi and Collymore in the hours leading up to the murder, (2) cooperator testimony regarding a meeting during which Gyamfi allegedly handed the murder weapon to Collymore, and (3) witness testimony that Gyamfi introduced Collymore to the individuals who operated the marijuana business in the apartment.

## EVIDENCE OF GYAMFI'S UNCHARGED MARIJUANA DISTRIBUTION IS INADMISSIBLE

### APPLICABLE LAW

Evidence of prior bad acts may be admissible under Fed. R. Evid. 404(b) to show "motive, intent…knowledge, identity, or absence of mistake or accident," but not to show character or propensity.  See United States v. McCallum, 585 F.3d 471, 475 (2d Cir. 2009).  This Circuit follows the "inclusionary" approach to "other crimes, wrongs, or acts" evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, See United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984), or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402.  See United States v. Sappe, 898 F.2d 878, 880 (2d Cir. 1990).

Thus, under Rule 404(b), the Court must determine: (1) whether the evidence is offered for a proper purpose; (2) whether the evidence is relevant to a material issue in dispute; and (3) whether its probative value is substantially outweighed by its prejudicial effect.  A fourth requirement is that, upon request, the Court must instruct the jury that prior acts evidence only may be considered for the proper purpose for which it was admitted.  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988); see also United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989).

"The availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence…"  See United States v. McCallum, 584 F.3d 471, 477 (2d Cir. 2009) (quoting 2 Weinstein, Federal Evidence, § 404.21).  Under Rule 403, otherwise relevant evidence must be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading

the jury, or considerations of undue delay, wasting time, or needless presentation of cumulative evidence.

## DISCUSSION

The Government seeks to introduce evidence of Mr. Gyamfi's "prior distribution" of marijuana as direct evidence of the charged crimes, or, alternatively, pursuant to Federal Rule of Evidence 404(b), as proof of knowledge, motive, and intent.  Specifically, the government seeks to have multiple witnesses testify that Gyamfi supplied marijuana to the dealers who operated out of the apartment.  The testimony would be that, at some unspecified time prior to the robbery, Gyamfi stopped supplying the apartment, thereby giving him a motive to orchestrate the robbery.  Additionally, the Government seeks to elicit testimony that Gyamfi distributed marijuana to his own customers, having nothing to do with the apartment.

Contrary to the Government argument, Gyamfi's alleged marijuana distribution is not "a key part of the narrative explaining the formation of the robbery conspiracy and the defendant's role in the attempted robbery." See Government motion in limine ("Government Motion") dated January 7, 2019 at p. 11.  The marijuana that was the object of the attempted robbery was not supplied by Gyamfi.  Any evidence of his alleged marijuana distribution activity, either supplying the apartment or distributing marijuana to others, is irrelevant and inadmissible.

A logical and less prejudicial point to start the narrative is the moment when Collymore and Gyamfi allegedly entered the apartment and saw where marijuana and money were stashed.  According to the Government, "Shortly before the robbery, the defendant brought Collymore to the apartment.  While there, Collymore and the defendant both observed the stash of marijuana kept inside the apartment, as well as the cash generated from the marijuana sales.  Following the visit, the defendant and Collymore planned to rob the apartment…" Id. at

pp. 2 and 3.  This, rather than Gyamfi supplying marijuana, is an appropriate start to the narrative.

Alternatively, the Government argues that the evidence demonstrates Gyamfi's "knowledge that the Apartment contained marijuana and drug proceeds…." Id. Government Motion at p. 8.  But there are other, less prejudicial ways to prove knowledge.  For example, Government witnesses are expected to testify that: (1) Gyamfi's girlfriend lived one floor above the apartment, (2) Gyamfi frequently entered the apartment to smoke and socialize while marijuana was being sold, and (3) many people from this neighborhood and surrounding area knew the apartment was a "weed spot."  As described above, Collymore and Gyamfi allegedly entered the apartment and saw marijuana being sold.

Alternatively, the Government argues that Gyamfi's prior marijuana dealing shows his motive.  Under the Government's theory, Gyamfi was frustrated about losing a source of income.  However, the Government's theory failed to state whether it was Gyamfi or the buyers who decided to end the alleged relationship.  The concept that the end of the business relationship gave him a motive to rob the apartment is, at best, speculative.

Finally, the Government argues that the evidence shows Gyamfi's "intent" to "obtain additional marijuana for his own redistribution." Id. at p. 8.  There is absolutely no factual basis to believe that Gyamfi, as opposed to the other three conspirators, would have distributed any marijuana that was stolen from the apartment.  The theory is designed to fit a prong under Rule 404(b), but it is speculative and unconvincing.

Given that there is a more logical starting point for the narrative, evidence of the uncharged marijuana distribution conspiracy should be excluded.  There is a danger that the jury would use this evidence, despite any limiting instruction, to find that Gyamfi is predisposed to

commit crimes.  The alleged marijuana distribution conspiracy is not relevant to the issue of whether Gyamfi participated in the charged crimes.

## THE COURT SHOULD PRECLUDE ADMISSION OF SELECTED CRIME SCENE AND AUTOPSY PHOTOGRAPHS

### APPLICABLE LAW

Relevant evidence is inadmissible if its probative value is substantially outweighed by unfair prejudice or a needless presentation of cumulative evidence.  See Fed. R. Evid. 403. "Unfair prejudice" under Rule 403 results from "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  See Fed. R. Evid. 403, Adv. Comm. Notes.  "Photographs depicting the bloody victim in a trial have routinely been the subject of Rule 403 objections, and the Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible.  See United States v. Velazquez, 246 F.3d 204, 210-211 (2d Cir. 2001).

The analysis "hinges upon whether the photograph is relevant to the resolution of some disputed point in a trial or otherwise aids a jury in a factual determination. Id.; see also United States v. Lopez, 271 F.3d 472, 482 (3d Cir. 2001) (affirming admission of photographs depicting victim's injury where charge required proving element of "serious disfigurement by mutilation").

### DISCUSSION

### The Crime Scene Photographs

The five photographs displaying the deceased victim's body, referred to in the government's memorandum as "the contested crime scene photos," and attached to the government's motion as Exhibit A, are overwhelmingly prejudicial and should be

precluded.  Defense counsel has previously acknowledged the admissibility of numerous crime scene photos.  The five "contested" crime scene photographs depict the deceased victim's body on the floor of the apartment with his head covered in blood.  Photographs Four and Five in particular depict closer views of the victim's blood-covered face and head. These images are undeniably grotesque and disturbing, and likely to excite emotions and inflame the jury.

Moreover, any limited probative value in the photos is substantially outweighed by unfair prejudice.  These images are neither relevant to any disputed issue in the case nor "essential," as the government claims, to aid the jury in a factual determination.  The defense does not expect to contest that Collymore committed a murder during the course of a failed robbery.  Further, the defense does not contest the manner in which the actual shooting is purported to have occurred.

Additionally, there are other ways for the Government to corroborate witness testimony regarding how the murder occurred.  For example, the crime scene video, police testimony, and police sketch are sufficient to establish the layout of the room and are also sufficient to corroborate Witness-4's testimony of his position and when the victim get shot.  The location of various pieces of evidence, such as the indentation on the wall, the barbells on the floor, ballistics evidence on the floor or bullet holes in the doorway, can also be established through witness testimony, the crime scene video, the police sketch, and individual photos.  Finally, it would not be confusing or difficult for the jury to understand that the victim was shot from above while lying on the floor based on witness testimony.

Accordingly, since the gruesome photos of the victim's body are unduly prejudicial and lack probative value, and because certain evidentiary purposes may be established through other, less prejudicial means, the contested crime scene photos should be precluded under Rule 403.

## The Autopsy Photographs

The Government seeks to introduce six autopsy photos of the victim, which are attached to the government's motion as Exhibit B.  Gyamfi opposes the admission of the autopsy photos numbered One through Four, since their limited probative value is substantially outweighed by unfair prejudice under Rule 403.  Again, the defense does not contest that: (1) there was a murder, (2) evidently committed by Collymore, (3) during the course of a failed robbery, or (4) the manner in which the actual shooting is purported to have occurred.  These photos depict disturbing, close-up images of the deceased victim's face, including a gunshot wound through the victim's cheek surrounded by bloody burn marks (Photo #1), the right side of the victims' face showing a wound to the forehead (Photo #2), a close-up of the victim's bruised head (Photo #3), and the back of the victim's head showing an exit wound from a shotgun shell. (Photo #4).  The Government noted that the photos are "not particularly gruesome," or could be interpreted as a person who was "asleep" or "unconscious person"; however, the victim is clearly deceased, evidenced by his blue lips and ears.  Moreover, the photos are not probative of any disputed issue that other evidence is incapable of establishing.

For example, the concept of "stippling" will be explained through the medical examiner's testimony and the autopsy report, and the defendant does not and will not contest that stippling occurred.  The medical examiner's testimony and autopsy reports will also sufficiently illustrate that the victim was struck in the head, as well as his position on the floor when he was shot and that he was shot from a close distance.  It is therefore not necessary for the jury to view the inflammatory autopsy photos. The autopsy photos should be excluded under Rule 403.

## THE COURT SHOULD PRECLUDE ADMISSION OF STATEMENTS MADE BY WITNESS-4

### APPLICABLE LAW

Prior to the admission of any evidence at trial, the Court must find that evidence to be relevant to a material issue in dispute.  See Fed. R. Evid. 403.  Such evidence must not be unnecessarily cumulative.  Id.  When that evidence constitutes statements made regarding an identification, those statements are admissible as non-hearsay evidence, unless the "identification is, 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'"  See United States v. Salameh, 152 F.3d 88, 125 (2d Cir. 1998).

### DISCUSSION

The Government seeks to admit various statements that Witness # 4 made to: (1) law enforcement, and (2) civilian witnesses, regarding his recognition of Collymore as the perpetrator of the failed robbery and murder.

The statements that Witness # 4 made to civilian witnesses should be precluded as hearsay.  The statements are clearly offered for the truth of the matter.  The statements are made during conversations between Witness-4 and other individuals who live in the neighborhood regarding the events of April 28, 2016.  The statements were made after Witness # 4 had time to reflect on his own potential culpability.  This is rank hearsay and improper bolstering.  See United States v. Medico, 557 F.2d 309 (2d Cir. 1977); (The question of the admission of hearsay statements, whether in a criminal or civil case, turns on due process considerations of fairness, reliability and trustworthiness.)  On its face, the Government proposes to offer conversations filled with gossip, innuendo and supposition.  Further, the Rule in 801(d)(1)(C) governs

identifications made to law enforcement officers, not conversations between the witness and people in the neighborhood such as friends or business associates.

In the event that Gyamfi attacks the credibility of Witness-4's testimony regarding "the manner in which the defendant committed the murder or Witness-4's perception at the time of the murder," the government seeks to "admit any prior consistent statements of Witness-4 relevant to whatever ground on which the defendant attacks Witness-4's credibility" under Rule 801(d)(1)(B).  See Government Motion at p. 21.  The 2014 Amendment to Rule 801(d)(1)(B) was added "to extend substantive effect to consistent statements that rebut other attacks on a witness -- such as the charges of inconsistency or faulty memory"; however, "[it] does not change traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes," and "[i]t does not allow impermissible bolstering of a witness."  See Fed. R. Evid. 801 Advisory Committee Notes, 2014 Amendments.  Additionally, the Amendment does not change the Second Circuit's rule that "prior consistent statements may not be offered 'to rebut only generalized attacks on credibility.'"  See United States v. Pierre,781 F.2d 329, 333 (2d Cir. 1986)).

Finally, Witness-4's statements to individuals who are not law enforcement officers are irrelevant to any material fact in dispute.  The defense anticipates that it will concede that Collymore committed the murder and that Witness-4 saw him do it.  These statements are unnecessarily cumulative and improper bolstering.

## THE ALLEGED COCONSPIRATOR STATEMENTS ARE INADMISSIBLE

### APPLICABLE LAW

According to Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement is not hearsay if: "[t]he statement is offered against a party and is… a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy.  The contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)".  See Fed. R. Evid. 801(d)(2)(E).

 "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule."  See Bourjaily v. United States, 483 U.S. 171, 175 (1987).  For a court to find that a statement falls within the Rule, it must find that, "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy."  See United States v. Tracy, 12 F.3d 1186, 1196 (2d Cir.1993).

In determining whether the 801(d)(2)(E) prerequisites have been proven by a preponderance of the evidence, the Court may consider the coconspirator statements themselves.  However, because these hearsay statements are presumptively unreliable, there must be independent corroborating evidence of the existence of the conspiracy and the participation therein of the declarant and the defendants.  See Fed. R. Evid. 801(d)(2)(E); see also United States v. Tellier, 83 F.3d 578, 580 (2d Cir.1996).

Further, the Government must also show that the proffered statements are relevant to a material fact at issue in this matter.  See Fed. R. Evid. 401, 402 and 403; see also United States v.

Carneglia, 256 F.R.D. 384, 397-98 (E.D.N.Y. 2009) (co-conspirator statements precluded where defendant's name appeared only 2 times during recorded conversation, defendant's name was introduced into the conversation by the cooperating witness, and other alleged co-conspirators did not appear to know the defendant).

The Government proposes the introduction of three categories of statements at trial: (1) statements made by Collymore and CC-2 regarding the planning, underlying motivation, and method of executing the robbery; (2) certain of Collymore's statements to the defendant, which were overheard by CC-2 as CC-2 waited with Collymore outside the apartment the night of the attempted robbery; and (3) statements made by Collymore to Witness-6 while in the defendant's presence after the murder.

Statements by Gyamfi or Collymore to Witness-6 after the Robbery and Murder

The Government asserts that because Gyamfi recounted the attempted robbery and Collymore's role in it to Witness-6, Gyamfi had to have been aware of the robbery before it occurred.  Further, the Government proffers that Gyamfi expressed fear of retaliation due to Collymore's actions.  Finally, the Government proffers that Collymore made statements to Witness-6 in the car.  None of the statements to Witness-6 are in furtherance of a conspiracy. Witness 6 is not a coconspirator.  The attempted robbery and murder had already occurred.

The Government conceded that multiple individuals in this neighborhood "lived, socialized and sold marijuana in and around the Apartment."  See Government Motion at p. 42.  News of the robbery would have traveled fast.  It would have been normal for people in the neighborhood, including Gyamfi, to have heard about the robbery not long after it occurred.  If people suspected Collymore of participating in the robbery, and Gyamfi introduced Collymore to

the Apartment, this would have been a basis of Gyamfi's fear.  But without further context, this conversation is not, on its face, in furtherance of the conspiracy.

These statements are not relevant.  The Government failed to explain how these statements relate to Gyamfi's intent or any other issue of material fact that is in dispute.  It would be improper for the Court to admit these statements at this stage of the proceedings.

## THE PHOTOGRAPH FROM COLLYMORE'S CELLPHONE SHOULD BE EXCLUDED FROM TRIAL

### APPLICABLE LAW

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.  Rule 402 requires the exclusion of irrelevant evidence.

Pursuant to Rule 403, relevant evidence is excluded when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

### DISCUSSION

The Government seeks to introduce a photograph that was "taken on Collymore's cellphone which the Government *believes* depicts Collymore holding a revolver that is *consistent* with the "Judge" type handgun used in the murder."  In other words, the Government is not sure that this photograph depicts Collymore or that it shows the murder weapon.  Moreover, the photograph allegedly was taken the day *after* the murder.

This application should be denied for several reasons.  First, the individual depicted in the photograph is not necessarily Collymore.  Because the individual is wearing large reflector sunglasses and an oversized hat, his eyes, forehead, ears, and hair are concealed.  Because the photograph is taken from below and depicts only the chest up, it is impossible to determine his height, weight and build.  The bulky jacket worn by the individual is yet another impediment to recognizing or identifying the individual. Consequently, there is little if any probative value.

Second, the gun in the photograph is not necessarily the firearm used in this attempted robbery and murder. Just a fraction of the firearm is visible, not enough to say with confidence that it is the murder weapon.  The Government concedes this uncertainty by describing it as a "Judge type handgun" that is *consistent* with the firearm used in the crime.

Third, if the photograph does indeed depict Collymore posing with the murder weapon one day *after* executing Vargas at point blank range, the prejudice requires exclusion under Rule 403.  It is overwhelmingly prejudicial because, rather than showing remorse or regret, Collymore poses with the weapon pointed down in the general direction of the camera.  The jury will see this as a reenactment of Collymore's "leaning over Vargas with a handgun pointed down at Vargas's face from a short distance," causing burnt gunpowder to leave stippling on Vargas' cheek. (see Gov't argument regarding Autopsy Photo 1).

Although the photograph supposedly depicts Collymore rather than Gyamfi, there will be spillover prejudice.  The jury will be invited to infer that Collymore lacks remorse for the murder and has a propensity to commit crimes.  Gyamfi allegedly had a close relationship with Collymore and introduced him into what the Government calls a "closely knit" community. Collymore already pleaded guilty and is not on trial. A photograph of a person who may not be

Collymore holding what may not be the murder weapon has little, if any, relevance.  It must be excluded under Rule 403.

## THE COURT SHOULD LIMIT THE GOVERNMENT'S IMPEACHMENT OF GYAMFI

### APPLICABLE LAW

Rule 609(a)(2) of the Federal Rules of Evidence says that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."  Rule 609 does not explicitly permit or require admission of the facts and circumstances underlying such a conviction.  Instead, Rule 609(a) addresses only the admissibility of "evidence of a criminal conviction."

### DISCUSSION

Should Gyamfi testify, the Government seeks to cross-examine him regarding his April 26, 2015 conviction in the United States District Court, Southern District of New York, for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.

If the Court is satisfied that conspiracy to commit bank fraud, by its very nature, involves a "dishonest act or false statement," then it would be the proper subject of cross-examination under Rule 609(a)(2).  However, such cross-examination should be limited to the fact and date of conviction.  The Court should not permit cross-examination regarding the facts and circumstances underlying the conviction, such as the loss amounts and the number of victims.  The conviction of bank fraud, by itself, suffices to undermine Gyamfi's credibility. Even if the underlying facts of the bank fraud conspiracy have marginal impeachment value, they would have to be excluded under Rule 403 because their probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…"

## THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PLACE LIMITATIONS ON THE SCOPE OF CROSS EXAMINATION

### APPLICABLE LAW

The Confrontation Clause of the Sixth Amendment guarantees the defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.

A district court has the discretion to allow "leeway" on cross-examination, including questions that are "somewhat more far-ranging than the direct examination…" United States v. Caracappa, 614 F.3d 30, 42-43 (2d Cir. 2010), cert. denied, 131 S.Ct. 675, 562 U.S. 1075, 178 L.Ed.2d 502. (prosecution was properly afforded "leeway" on cross-examination to question a defendant police officer's former partner regarding police procedures, the defendant's personal life, and various driving times and distances, where they were reasonably related to the direct testimony).  The "extent" of cross-examination "rests in the sound discretion of the trial judge." District of Columbia v. Clawans, 300 U.S. 617, 632, 57 S.Ct. 660, 81 L.Ed. 843 (1937); United States v. Bari, 750 F.2d 1169, 1178 (2d Cir.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). A district court's exercise of discretion will not be overturned absent a clear showing of abuse. *Id*. at 1178–79.

Rule 611(b) of the Federal Rules of Evidence provides that cross-examination "should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility" but that the court "may allow inquiry into additional matters as if on direct examination."

Rule 611(a) of the Federal Rules of Evidence directs the court to "exercise reasonable control over the mode and order of examining witnesses… so as to (1) make [the examinations]

effective for determining the truth; (2) avoid wasting time; and (3) protect the witness from harassment or undue embarrassment."

## DISCUSSION

The Government seeks advance rulings from the Court regarding the scope of cross examination for both law enforcement and civilian witnesses.  For both categories of witnesses, the motion is premature and should be denied.

With respect to law enforcement witnesses, the Government seeks "to preclude cross-examination on topics outside the scope of the anticipated direct testimony."  The Government says it intends to present testimony from one of the first law enforcement officers to arrive at the scene, a crime scene technician who photographed the scene, and a detective who at some point obtained surveillance video.  However, the Government has not yet provided a witness, let alone statements of witnesses in the form of § 3500 material.  At this juncture, there is now way of knowing how many law enforcement witnesses will be called, whether there will be gaps in the narrative or in the Government's proof, or contradictions between the various witnesses' testimony or prior statements.  At trial, defense counsel will be mindful of limitations on the scope of cross-examination under Rule 611(b).  At this point, more than a month prior to trial, the court cannot make informed rulings regarding the scope of cross-examination. In making those rulings, the court will have to consider Rule 611(a), which directs the court to exercise "reasonable control" over examination of witnesses to make the procedures effective for "determining the truth" and prevent the "wasting of time."  Those factors will become more apparent at trial.

The Government also makes a motion to limit the cross-examination of lay witnesses.  According to the Government, "many" of them are from a "tightly-knit community"

where they "overheard assertions, rumor and speculation concerning each other, marijuana

selling at the Apartment, and the events of April 28, 2016."   The Government asks the Court to

preclude the defense from eliciting "out-of-court statements of witnesses, the overheard

statements of other witnesses or non-witnesses, and beliefs formed by such witnesses based on

the statements of other witnesses or non-witnesses." (p. 42-43).  The Government has not yet

disclosed the substance of those statements.  This is a murder trial.  Rather than rely on the

Government's interpretation of the significance of these statements, the defense will make its

own analysis of whether they are merely "assertions, rumors, and speculation."  It is not clear

whether any of those statements will be exculpatory or will fall into some exception to the

hearsay rule.  In short, this motion should be denied as premature.

WHEREFORE, the defendant, Andy Gyamfi, respectfully submits that the Government's

motions should be denied, or that the Court should grant such other and further relief as this

Court may deem just and proper.

Dated:  January 21, 2019                                    Respectfully Submitted,

                                                                        /s/

                                                                        Donald Yannella, Esq.
                                                                        Karloff C. Commissiong Esq.