UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

       - against -                                                    16 Cr. 521 (JSR)

ANDY GYAMFI,

                  Defendant.

-------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION
# TO ADMISSION OF A YOUTUBE RAP VIDEO AND THE
# GOVERNMENT'S REQUEST TO LIMIT
# CROSS EXAMINATION OF GOVERNMENT WITNESSES

DONALD YANNELLA, ESQ.
KARLOFF COMMISSIONG, ESQ.

*Attorneys for Defendant Andy Gyamfi*

## PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the Government's first and second supplemental motions *in limine,* (ECF # 99 and 104).  Regarding the first supplemental motion, the Government should be precluded from introducing excerpts from the "Jumpman" rap video. Regarding the second supplemental motion, the defense contends that some, but not all, of the convictions may be introduced at trial and that the facts underlying some of those convictions or prior bad acts may be the subject of cross examination.

The Government's theory of the case is that Mr. Gyamfi supplied Carlos Vargas with the "Sour Diesel" brand of marijuana that was sold from an apartment "[i]n the weeks before the attempted robbery."  That business relationship allegedly ended when Mr. Vargas decided to return to his original supplier of marijuana "just prior" to the attempted robbery. According to the Government, Mr. Gyamfi and Mr. Collymore entered the apartment and saw the marijuana and money on some unspecified date prior to the attempted robbery.  During the attempted robbery, the Government alleges that only CC-2 and Mr. Collymore entered the apartment and that Mr. Collymore fatally shot Mr. Vargas. The Government alleges that Mr. Gyamfi and CC-3 "guided" Mr. Collymore and CC-2 by providing them with information in "real time" regarding conditions in the apartment.  Mr. Gyamfi is not alleged to have entered the apartment during the attempted robbery.

## POINT I

## EXCERPTS FROM THE YOUTUBE RAP VIDEO SHOULD BE EXCLUDED FROM TRIAL

### APPLICABLE LAW

"Rap lyrics… are properly admitted… where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *See United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015).  The Government may not, "structure a trial in whatever way would produce the maximum unfair prejudice consistent with relevance…[choosing]…the available alternative carrying the greatest threat of improper influence…" *See Old Chief v. United States*, 519 U.S. 172, 183 (1997).  Further, Fed. R. Evid. 404(b), "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge.  Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *See Huddleston v. United States*, 485 U.S. 681, 685 (1988).

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401.  Rule 402 requires the exclusion of irrelevant evidence.  Pursuant to Rule 403, even relevant evidence is excluded  when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403.  Rule 403 requires a court to examine whether the evidence is "unfairly" prejudicial.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the

3

factfinder into declaring guilt on a ground different from proof specific to the offense charged." *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Unfair prejudice exists where the evidence has a tendency to suggest that a decision be made on an "improper basis." *Id*. "[E]vidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *See United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (citation omitted).  For instance, "[t]he prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *See United States v. Mercado*, 573 F.3d 138, 146 (2d Cir. 2009) (citation omitted).

Finally, a statement is hearsay, if (1) the declarant does not make [the statement] while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.  *See* Fed. R. Evid. 801(c).  Further, an out-of-court statement does not constitute hearsay, if "offered against the opposing party" and "made by the party in an individual capacity." *See* Fed. R. Evid. 801(d)(2)(A).

## DISCUSSION

The Government should be precluded from introducing the "Jumpman" rap video in evidence at trial.  The Government argues that it is relevant because it depicts Mr. Gyamfi "rapping about… his ability to supply the specific type of marijuana at issue (Sour Diesel) to the particular person, CC-3, that… facilitated the robbery attempt from inside the apartment." *See* Government Memorandum dated January 28, 2019 at p. 3, 4.

The relevance of this evidence is minimal at best.  First, the Government failed to state: (1) when the song was written, (2) who wrote it, (3) when it was recorded and produced, or (4) when the video was recorded and produced.  The charged marijuana conspiracy in Count Five occurred,

4

"in or about 2016".  The attempted robbery and homicide of Carlos Vargas that are the subject of the first four counts of the indictment occurred on April 28, 2016.  The video was posted to the internet on November 17, 2015.

Further, rap in many instances is written in the first person, saturated with violent metaphors, and often tells violent tales.  Andrea Dennis, Poetic (In)Justice? Rap Music Lyrics as Art, Life and Criminal Evidence, 31 Colum. J.L. & Arts 1, 22-23 (2007).  "Courts do not acknowledge that defendants authoring rap music lyrics are engaging in an artistic process that challenges everyday expectations regarding language." *See* Dennis, supra, 31 Colum. J.L. & Arts at 13-14.  Dennis, an Associate Professor of Law, explained: Similar to other art forms, rap lyrics have their own artistic or poetic conventions.

The use of these conventions is commonly understood in more traditional arts such as fiction writing and poetry.  *See* Andrea Dennis, Poetic (In)Justice?  Rap Music Lyrics as Art, Life and Criminal Evidence, 31 Colum. J.L. & Arts 1, 20 (2007); *see also United States v. Bey*, No. CR 16-290, 2017 WL 1547006, at *6 (E.D. Pa. Apr. 28, 2017)(Viewed in their broader artistic context, the rap music evidence does not have a high probative value.  Rap lyrics are not necessarily autobiographical statements; rather, rap music is a well-recognized musical genre that often utilizes exaggeration, metaphor, and braggadocio for the purpose of artistic expression.  Because rap lyrics may falsely or inaccurately depict real-life events, they should not necessarily be understood as autobiographical statements.); *see also United States v. Sneed*, No. 3:14 CR 00159, 2016 WL 4191683, at *6 (M.D. Tenn. Aug. 9, 2016), quoting *State v. Skinner*, 218 N.J. 496, 520 (2014)(The difficulty in identifying probative value in fictional or other forms of artistic self-expressive endeavors is that one cannot presume that, simply because an author has chosen to

5

write about certain topics, he or she has acted in accordance with those views. One would not presume that Bob Marley, who wrote the well-known song "I Shot the Sheriff," actually shot a sheriff, or that Edgar Allan Poe buried a man beneath his floorboards, as depicted in his short story 'The Tell—Tale Heart,' simply because of their respective artistic endeavors on those subjects.) The meaning and tone of this song and video are susceptible to multiple interpretations. The song and subsequent video were meant to be an exaggeration.

      The song itself is based on a commercial rap song by the same name ("Jumpman"), performed by rap artists Future and Drake. In the more well-known version of the song, Future references money and drug dealing with the lyrics: "I just threw a private dinner in L.A., Trappin' is a hobby that's the way for me, Money comin' we never gettin' sleep, Bentley Spurs and Phantom Jordan fadeaway". In another part of this version, Future rapped, "Dopeman, dopeman, dopeman, dopeman, dopeman, dopeman, money on the counter, choppers on the floor". The term "chopper" is a reference to an AK-47. Future bragged in this song, about money and crime, two elements which have become been staples for commercial success of rap songs for years. Yet there is no indictment of Future or Drake. Mr. Gyamfi's song follows the same pattern of stylized language glorifying money and drugs, and it even makes reference to Quentin Tarantino who similarly stylized violence in a way that departed from reality. This further minimizes the relevance of the lyrics that the Government seeks to introduce.

      Additionally, this is clearly propensity evidence by another name. While "Jumpman" is not an "act" as contemplated Rule 404(b), the Government seeks to present the song to the jury as if it were an admission of a prior bad act. In order to accomplish this, the Government relied on *Pierce*. *Pierce* was a racketeering indictment which charged an act of violence perpetrated by

6

members of one gang, GFC, against another gang, the Young Gunnaz. The rap video by the defendant, who was a member of GFC, was properly admitted to establish the defendant's "association with members of the enterprise and his motive to participate in the charged conduct against members of the Young Gunnaz." *See Id.* at 840.

The rap video in *Pierce* was relevant because it tended to prove the defendant's "animosity" toward the rival gang. There is no gang activity in the instant case. The Government is trying to sell the notion that if Mr. Gyamfi rapped about drugs, then he must have participated in the alleged conspiracy, and therefore must be guilty of the robbery and murder. This is the type of evidence that Fed. R. Evid. 404(b) cautions against admitting. *See United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009)("The availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence…[i]f the incremental value is slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403.")

Further, there are salient facts about the video that minimize any relevance that the Government believes that it has. The video does not depict the apartment associated with the robbery and murder. None of the people that appear in the video are alleged to have participated in the robbery, murder or narcotics conspiracy. The Government claims that the front of Mr. Gyamfi's apartment building is depicted in the video. However, that information is easily proved by other much less prejudicial evidence. Further, the implication from the Government's theory is that the money in the song and video, as well as the Audi depicted in the video are proceeds from this conspiracy. Yet Mr. Gyamfi does not own an Audi, and the Government has no idea who the money in the video belonged to, or how Mr. Gyamfi acquired it for the video. Moreover, the

7

marijuana conspiracy charged in Count Five involved just a couple of pounds of marijuana being occasionally supplied, not a larger volume of marijuana that would generate income to purchase a luxury car.

The Government further relied on Fed. R. Evid. 801(d)(2)(A) and (B). However, admission of "Jumpman" at trial is rank hearsay. The Government intends to have Witness-6 testify at trial about the meaning of a song that he did not write or produce. But Witness-6 cannot say that Mr. Gyamfi authored this version of "Jumpman." Therefore, the lyrics cannot be considered Mr. Gyamfi's statements, as contemplated by Rule 801. The song is only being admitted to for the Government to assert the truth of the statement within the song, the Andy Gyamfi sells drugs. Fed. R. Evid. 801(d)(2)(A) and (B) are inapplicable and the Government's reliance on these rules misplaced.

Finally, the Government argued that the video is relevant to establish Mr. Gyamfi's association with CC-3. There are other, less prejudicial, ways to establish that Mr. Gyamfi associated with CC-3. Several witnesses will testify that they observed Mr. Gyamfi and CC-3 socializing with each other. Moreover, the Government has offered no proof that the person the Government calls CC-3 is a co-conspirator, given that he has not pleaded guilty and has never admitted "guiding" or aiding the robbery, as the Government alleged.

## POINT II

## CROSS EXAMINATION OF GOVERNMENT WITNESSES SHOULD NOT BE LIMITED

### APPLICABLE LAW

Rule 608(b) provides that "[e]xcept for a criminal conviction under a Rule 609, extrinsic evidence is not admissible to prove specific instances of a witnesses conduct in order to attack or support the witness's character for truthfulness." However, Rule 608(b) also says that "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of... the witness…".

Rule 609 governs when a criminal conviction may be admitted to attack a witness's character for truthfulness. Under Rule 609(a)(1)(A), a felony conviction "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." For non-felony criminal convictions, the evidence "must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement."

Rule 609(b) addresses instances in which "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Under those circumstances, the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."

Rule 611 provides that the court should "exercise reasonable control over the mode and order of examining witnesses" in order to "(1) make those procedures effective for determining

9

the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

### Analysis of prior convictions and bad acts of Witness 4

The Government describes Witness-4 as an eyewitness to the attempted robbery and murder, who was "present in the Apartment when Collymore and CC-2 attempted to rob it; in fact, Witness-4 was shot at by Collymore, and saw Collymore murder Carlos Vargas." *See* Government Memorandum ("Gov. Mem.") dated February 6, 2019 at p. 5 .

The Government seeks to preclude the defense from cross-examining Witness-4 being cross examined on only two of his six prior convictions, effectively sanitizing his prior record. Specifically, the Government "does not object to questioning regarding Witness-4's two 2016 drug convictions, both of which relate to the drug dealing that will already be a subject of his testimony." *See* Gov. Mem. at p. 6.

The Government seeks to preclude admission of four other convictions, none of which are felonies, and as a result, are analyzed under Rule 609(a)(1)(2) and (b). The Government provides the following description of the convictions. Each is followed by the defendant's response in italics, both under Rule 608 and Rule 609:

> (1) In 2008, Witness-4 was convicted of disorderly conduct, a violation, based on his attempt to jump a subway turnstile. Witness-4 was sentenced to conditional discharge.
>
> *The New York State Penal Law defines attempting to jump a turnstile as Theft of Services in violation of P.L. § 165.15. Because theft is stealing, the Government is wrong in arguing that Theft of Services does not involve dishonesty. Because it is more than 10 years old, there Court must balance the factors under Rule 609(b). In sum, it clearly reflects on Witness-4's honesty, and there is almost no prejudice because it is a common offense that carries little social stigma. The conviction is admissible under 609, and the defense should be permitted to cross examine, under Rule 608.*

10

(2) In 2013, Witness-4 was convicted of intent to obtain transportation without paying, a misdemeanor, based on another attempt to jump a subway turnstile. Witness-4 was sentenced to time served.

*See above analysis regarding Theft of Services, in violation of § 165.15 Theft of services.*

(3) In 2015, Witness-4 was convicted of assault with intent to injure a police officer, a felony. This arrest arose out of an instance when Witness-4 was attempting to jump a turnstile. As Witness-4 attempted to flee apprehension for that offense, a police officer was injured when falling into a subway turnstile while chasing Witness-4. As a result of this case, Witness-4 was sentenced to 90 days' incarceration and five years' probation.

*Again it involved Theft of Service. Moreover, he attempted to flee to avoid being arrested. While theft of services is arguably a crime of poverty, trying to escape apprehension, especially when caught in the act, is dishonest. The conviction is admissible under 609, and the defense should be permitted to cross examine, under Rule 608.*

(4) In 2015, Witness-4 was convicted of criminal contempt, a misdemeanor, based on his presence at his girlfriend's residence in violation of an order of protection. Witness-4 was sentenced to conditional discharge.

*Witness-4 violated Orders of Protection, by "being present with [his girlfriend] inside 100 Centre Street." Additionally, the New York County District Attorney stated on the record that there were multiple documented violations of the Order, including several phone calls that Witness-4 placed to this girlfriend from Riker's Island. Orders of Protection are routinely issued in State Court as a condition of bail. Witness-4 was required to sign each Order of Protection, which is a promise to abide by a Court Order. Clearly, when Witness-4 signed he did not intend to keep his promise to have no contact with the victim. The violations reflect on his credibility. The conviction is admissible under 609, and the defense should be permitted to cross examine, under Rule 608.*

Analysis of prior convictions and bad acts of Witness 6

According to the Government, Witness-6 assisted Collymore and Gyamfi a few hours after the murder when he "picked up the defendant and Collymore in Witness-6's car, helped Collymore change his clothes, gave Collymore money, and drove Collymore to a subway station so that he could get out of the area." The Government asserts that Witness-6 was also a

11

"participant in the charged marijuana conspiracy involving the defendant." The Government contends that only a fraction of Witness-6's criminal history and prior bad acts are proper subjects for cross examination. Specifically, the Government, "does not object to questioning regarding Witness-6's prior drug conviction or his history of drug dealing." *See* Gov. Mem. at p. 10. The Court should deny the Government's application to "preclude the defense from questioning Witness-6 regarding the uncharged instances of violence and gun possession, as well as his kidnapping-related convictions." *See Id*. A closer look at those convictions reveals that they are not just acts of violence, but instead are acts of dishonesty. The Government's description of those acts, and the defense response, are listed below:

> (1) In 2007, Witness-6 was convicted of misdemeanor unlawful restraint, misdemeanor terroristic threats, and felony kidnapping. Those convictions all arose out of the same incident. In 2007, Witness-6 learned that his home was burglarized. In response, Witness-6 and a group of his friends—including Collymore—decided to kidnap and beat the person they believed was responsible. The group lured the victim into a car and then kept the doors locked while they threatened and beat the victim. They eventually allowed the victim to leave. Witness-6 pled guilty and was sentenced to 5 to 10 years' imprisonment. Witness-6 was released from prison on parole in 2012. Collymore was never charged in the case.
>
> *The convictions are admissible under Rule 609. Witness-6 was paroled in 2012 (3519-05). Rule 609(b) addresses instances in which "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Ten years have not passed since Witness-6 was paroled. Therefore, there is no need for the Court to consider whether "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Yet the facts underlying the case are highly probative of his credibility. Witness-6 and Collymore had drugs illegally stored at a location. Based upon a tip, they took the law into their own hands by kidnapping the victim who they thought may have taken the drugs. In Witness-6's own words, "So me and three friends went to the victims house, first we called him. When we got there we told him we were going to get something to eat, He got in and we drove off. About two blocks away I asked him if he robbed my house he said no, but I didn't believe him and began beating on him. I then put the gun to his face and threatened to kill him if he didn't tell me where my money and stuff stolen from the house way. He denied it." That is extortion. The*

12

*conviction is admissible under Rule 609, and the underlying facts may be explored on cross examination under Rule 608.*

(2) In or around 2004, Witness-6 participated in a multiple of robberies during which he stole items including cellphones and money from his victims.  Witness-6 estimates that he participated in fewer than 10 such robberies.  Witness-6 was never caught for any of those robberies.

*These acts are not convictions that would implicate Rule 609, but the defense should be able to inquire about the robberies on cross examination pursuant to Fed. R. Evid. 608. They represent evidence of the witness's character for dishonesty.*

## CONCLUSION

WHEREFORE, Defendant Andy Gyamfi, by and through his attorneys, respectfully moves for the relief set forth herein, and moves for such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         February 11, 2019

                                        Respectfully submitted,

                                        Donald Yannella
                                        Karloff Commissiong
                                        *Attorneys for Defendant Andy Gyamfi*

13