UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

UNITED STATES


      - against -                                                   16 Cr. 521 (JSR)


ANDY GYAMFI,

               Defendant
--------------------------------------------------X




DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO
ADMIT A PRIOR IDENTIFICATION UNDER FED. R. EVID. 801(d)(1)(C)




Dated:   New York, New York
          February 19, 2019


                                   Donald Yannella, Esq.
                                   Karloff Commissiong, Esq.

                                   *Attorneys for Andy Gyamfi*

This supplemental memorandum is submitted in opposition to the Government's motion *in limine,* (ECF 93), and in reply to the Government's letter, date February 17, 2019, regarding the application of Rule 801(d)(1)(C) of the Federal Rules of Evidence.  Rule 801(d)(1)(C) permits a witness' prior consistent statement when the declarant testifies, is subjected to cross-examination, and "identifies a person as someone the declarant perceived earlier."

The reports made by Witness-4 to law enforcement officers are not the type of "identification" contemplated by Rule 801(d)(1)(C).  Although the rule does not define prior identifications, it logically applies only to a police arranged identification procedure, such as a line-up, where the witness had an opportunity to "identify" a perpetrator who was not well known to the witness prior to the crime.  The line-up identification is admissible at trial because it is probative of the witness' ability to identify such a perpetrator not long after the crime.  This is because it may be harder for the witness to identify the perpetrator at trial, which can occur months or years later when the witness' memory has faded.  Under those circumstances, the fact that the witness was able to identify the perpetrator in the past falls within the ambit of the hearsay exclusion rule.

The case cited by the Government, *United States v. FNU LNU*, 578 Fed.Appx. 27 (2d Cir. 2014), does not apply to the so-called "identifications" made by Witness 4.  In *FNU LNU*, the defendant committed identify theft and fraudulently placed his own photograph on identification documents containing the deceased victim's name.  At trial, the Government called the victim's widow to testify that the defendant was not her deceased husband.  She described her deceased husband's appearance and identified him in a photograph on his 1981 application for lawful permanent residency, marked as Gov't Ex. 3.  The Rule 801(d)(1)(C) issue arose when

defense counsel impeached the widow on cross-examination by eliciting that, in the first of three meetings with the Government, she was "unsure" if the photograph in GX-3 really was her husband.  On redirect examination, the Government was permitted to elicit that the widow had met with the Government on three sequential days and had identified her deceased husband on the second day as the person in in GX-3.  That prior "identification" of her deceased husband only was admitted only due to the nature of the cross examination.  (copy of relevant portion of Gov't brief in *United States v. FNU LNU,* is attached as an exhibit).

The facts of *FNU LNU* are nothing like those of the instant case, especially since the Government seeks to invoke Rule 801(d)(1)(C) on direct examination.  Witness-4 will testify that he immediately recognized Dwaine Collymore, an acquaintance whom he knew as Twin, when Twin's was pointing a gun at him and about to shoot.  They looked each other in the eye when Twin's hoodie and bandana had fallen partially off his face.  Witness-4 had been introduced to Twin and has socialized with him in the weeks prior to the robbery.  His first instinct was to address "Twin" by name and ask him how he could pull a gun on people he knew. Instead, Witness-4 turned off the lights in the apartment, fell to the floor, and "played dead" after hearing a gunshot.  Because Witness-4 was afraid that he would incriminate himself in relation to narcotics distribution if he reported the robbery, he fled from the apartment while other individuals concealed the marijuana and cash that were the object of the attempted robbery.  In the days after the attempted robbery, Witness-4 discussed with friends whether to report Twin to the police.  On the fifth day, he reported the crime and showed detectives a photograph of Twin from social media.

Under these circumstances, Witness-4 was merely reporting a crime committed by an acquaintance when he spoke to NYPD detectives on three occasions: May 3, May 9, and June 7,

2016.  He was not identifying Twin as much as helping the police to locate Twin.  By analogy, if a wife reports that her husband assaulted her five days earlier and shows the police a photograph of him, it is not an identification procedure.  Showing the photograph is incidental to reporting the crime. A prosecutor would not be able to bolster the wife's in-court testimony regarding the assault by characterizing her initial report to police as an identification procedure.

Witness-4's prior consistent statements to the police are impermissible bolstering and are inadmissible at trial.  If the Government's interpretation of Rule 801(d)(1)(C) were correct, every time a witness identified a perpetrator in a photograph or video at a proffer, he could bolster his in-court account of events by recounting all the identifications he had made in the proffer room. Courtroom testimony could be subsumed by the proffer identifications, depriving the jury of an opportunity to scrutinize the testimony of the witness on that topic and violating the defendant's confrontation rights under the Sixth Amendment to the United States Constitution.  The Government's application must be denied.

Dated: February 19, 2019       Respectfully Submitted,

/s/

Donald Yannella, Esq.
Karloff C. Commissiong Esq.

EXHIBIT

13

family history and the family story, going back to Mr. Garcia's childhood" and described their testimony as "overwhelmingly compelling in terms of their veracity . . . and their identification of the pictures throughout Mr. Garcia's life." (A. 610-11).

In contrast, Judge Karas found the Defendant's "explanation of the parents' names . . . ridiculous," and concluded that the Defendant's claim that his parents were named Rodolfo and Matilde, but that he called them Estefana and Antonio, was "perjury." (A. 612). Judge Karas further remarked that the Defendant's attempt to "weave through" the testimony about the anniversary photograph of his alleged parents really "exposed his perjury." (A. 613). Indeed, Judge Karas commented that it was "frankly, [] not a close call in terms of his perjury." (A. 614). Then, having considered the factors set forth in Section 3553(a) of Title 18, United States Code (including the Defendant's "utter lack of remorse manifested in the perjurious testimony"), Judge Karas sentenced the Defendant principally to an aggregate term of 45 months' imprisonment. (A. 631-32).

# A R G U M E N T

## POINT I

### Judge Karas Properly Permitted the Widow to Testify about a Prior Identification

The Defendant contends that Judge Karas abused his discretion by permitting the Widow, on redirect examination, to testify that she had previously identi-

14

fied a particular photograph as depicting her husband, the Victim. (Br. 13-16). He is wrong. This testimony was plainly permissible under Rule 801(d)(1)(C) of the Federal Rules of Evidence. Even if the Defendant could somehow demonstrate error, any such error was harmless given the powerful evidence of the Defendant's guilt. The Defendant's claim should therefore be rejected.

## A. Relevant Facts

While cross-examining the Widow, the Defendant's counsel elicited that the Widow had met with the Government on Sunday, Monday, and Tuesday of that week. (A. 347). Counsel also asked whether it was true that when the Widow had met with the Government on Sunday, she had been unsure if Government Exhibit 3 was a photograph of her husband. (A. 358). The Widow answered that she had been unsure about the photograph on Sunday because her husband's face was "fuller" in the picture than she remembered. (A. 358). On redirect examination, the Government elicited that on the Sunday the Widow had met with the Government, she had arisen at 4:00 a.m., flown (via a connecting flight) from Texas to New York, and found it quite difficult to discuss her husband. (A. 359). The Government also elicited, over counsel's objection, that the Widow had met with the Government again on Monday, during which meeting she had identified Government Exhibit 3 as a photograph of her husband. (A. 360).

## B.  Applicable Law

Testimony about a witness's prior, out-of-court identification constitutes a non-hearsay statement admissible under Rule 801(d)(1)(C) of the Federal Rules of Evidence. Fed. R. Evid. 801(d)(1)(C) (providing that a statement "is not hearsay" if "[t]he declarant testifies and is subject to cross-examination about a prior statement" and the statement "identifies a person as someone the declarant perceived earlier"); *see also, e.g.*, *United States* v. *Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) ("A prior identification is admissible under Fed. R. Evid. 801(d)(1)(C).").

Like prior identifications, a witness's prior statement that is consistent with her testimony at trial and is offered "to rebut an express or implied charge that the declarant recently fabricated it" is admissible as non-hearsay. Fed. R. Evid. 801(d)(1)(B). Prior statements of a witness may also be admitted, not for the truth of the matter asserted, but for purposes of rehabilitating the credibility of a witness or clarifying an apparent contradiction elicited during cross-examination. *See United States* v. *Khan*, 821 F.2d 90, 94 (2d Cir. 1987); *United States* v. *Brennan*, 798 F.2d 581, 588 (2d Cir. 1986); *United States* v. *Pierre*, 781 F.2d 329, 330-31 (2d Cir. 1986). In determining whether a proffered statement is properly admitted as rehabilitative or clarifying evidence, the inquiry is "whether the particular consistent statement sought to be used has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." *United States* v. *Pierre*, 781 F.2d at 331. If admissible

on this ground, it is irrelevant whether the statement was made before or after a motive to fabricate arose.

Trial courts enjoy broad discretion to decide evidentiary issues. *See United States* v. *Khalil*, 214 F.3d 111, 122 (2d Cir. 2000). This Court will not deem the trial judge to have abused his discretion in making an evidentiary ruling absent the conviction that the judge acted "in an arbitrary and irrational fashion." *United States* v. *Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001). Moreover, an erroneous evidentiary ruling should be disregarded if the error is harmless. *See* Fed. R. Crim. P. 52(a). So long as there is "fair assurance" that the jury's "judgment was not substantially swayed by the error," the error will be considered harmless. *Kotteakos* v. *United States*, 328 U.S. 750, 764-65 (1946).

## C. Discussion

The Defendant contends that the Widow's testimony regarding her prior identification of a photograph of the Victim violated Rule 801(d)(1)(B), which allows prior consistent statements in circumstances the Defendant contends were not satisfied here. This argument falls far wide of the mark, because the testimony was plainly admissible under Rule 801(d)(1)(C). That Rule, which the Defendant fails even to acknowledge (let alone address), provides that an out-of-court statement "identif[ying] a person as someone the declarant perceived earlier" is admissible, non-hearsay testimony if the declarant "testifies and is subject to cross-examination about a prior statement." Fed. R. Evid. 801(d)(1)(C). These condi-

17

tions were met here. Prior to her testimony, the Widow identified Government Exhibit 3 as a photograph of her husband, the Victim. Because the Widow testified at trial and was subject to cross-examination, the challenged testimony was an admissible prior identification. Judge Karas thus did not abuse his discretion in allowing the testimony.

Testimony about the prior identification was also admissible to rehabilitate the Widow. On cross-examination, the Defendant's counsel established that the Widow had met with the Government on three sequential days leading up to her testimony. (A. 347). Counsel then elicited that, on the first of those days (a Sunday), the Widow had been unsure whether Government Exhibit 3 was a photograph of her husband. (A. 358 (counsel asking, "on Sunday, when you met with [the prosecutor], did you look at [Government Exhibit 3] and indicate to [the prosecutor] that you were not sure if that was your husband? Yes or no?," and the Widow responding, "Yes.")). Counsel did not inquire whether the Widow had been shown photographs during her meetings with the Government on the following two days or whether she had identified the people depicted in any such photographs, and thus potentially left the jury with a misimpression. The Widow's confusion during the Sunday meeting, immediately after a long flight, on little sleep, and subject to the stress of an initial meeting with the Government, was understandable. Her failure to identify her husband in Government Exhibit 3 on subsequent occasions would have been less so. In these circumstances, the Government's questions concerning the Widow's identification of the

18

Victim on Monday were proper to rehabilitate the Widow following cross-examination. *See, e.g.*, *United States* v. *Khan*, 821 F.2d at 94.

Even if Judge Karas abused his discretion in permitting the prior identification (and he did not), any such error was harmless given the strength of the evidence against the Defendant and the relative insignificance of the challenged testimony. As the Defendant acknowledges, the Victim's Sister and the Widow gave "particularly compelling" testimony that the Defendant was not Oscar Mario Garcia Hinojosa. (Br. 12). Perhaps even more powerfully, the Defendant had in his residence—and submitted along with his Naturalization Application—a copy of the Victim's 1981 Green Card, which bore the Victim's (and not the Defendant's) fingerprint. (GX 5, 50; A. 238).

Moreover, the Defendant repeatedly listed on various applications the wrong birth place for the Victim and the wrong names of the Victim's parents, and the testimony he gave in an attempt to explain those errors (*i.e.*, that he used "Estefana" and "Antonio" as nicknames for Matilde and Rodolfo, and had listed Reynoso rather than Doctor Coss as his birth place because the two towns were only "about two hours away" from each other (Tr. 422-23)) was preposterous. Additionally, the Defendant—who saw only one version of the Victim's signature, which had been cut short by the limited space on the 1981 Green Card—obviously patterned his forgery of the Victim's signature on that single exemplar and signed numerous fraudulent documents with the Victim's shortened signature. Finally, the Defendant even took steps to

19

make himself resemble the Victim. When using the 1981 Green Card to apply for naturalization, the Defendant made himself look like the Victim by getting the same haircut and growing the same facial hair. After acquiring citizenship, however, the Defendant reverted to his typical appearance. Considered against the weight of this evidence, the challenged testimony was insignificant and had no conceivable impact on the jury's verdict.

In sum, because the prior identification was admissible, non-hearsay testimony under Rule 801(d)(1)(C), Judge Karas did not abuse his discretion in admitting it. At worst, any error (and, again, there was none) was harmless.

## POINT II

### Judge Karas Did Not Plainly Err in Precluding the Defendant's Testimony Concerning Hearsay Statements Made to Him by His Family

The Defendant next contends that Judge Karas "thwarted" his "efforts to present a defense" by precluding him from testifying that he had left Texas and moved to New York because members of his family had asked him to let a cousin use his identity. (Br. 16-19). The Defendant's claim has no traction. Judge Karas properly excluded the testimony on hearsay grounds, and the Defendant provided no non-hearsay basis for its admission. Judge Karas's ruling was not erroneous, let alone plainly so. The Defendant's claim should therefore be rejected.