USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------
UNITED STATES OF AMERICA

    -against-

ANDY GYAMFI,

            Defendant.
------------------------------------

16-cr-521-2 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

The felony murder rule – which imposes strict liability for even accidental killings that result from commission of a felony – has long since been rejected by its country of origin, England. As early as 1830, the famous legal scholar and historian Thomas Babington Macaulay wrote that "to pronounce [a defendant] guilty of one offense because a misfortune befell him while he was committing another offense . . . is surely to confound all the boundaries of crime." 9 THOMAS BABINGTON MACAULAY, Indian Penal Code, in THE COMPLETE WRITINGS OF THOMAS BABINGTON MACAULAY 551, 670 (1901). Yet felony murder remains part of the law of the United States, and in the instant case the Government seeks to extend it to someone who was merely an aider-and-abettor of the underlying felony.

Specifically, defendant Andy Gyamfi is charged, inter alia, with felony murder – with all the heavy punishment that accompanies a murder charge – on the ground that he aided and abetted an armed robbery, committed by someone else in Gyamfi's

absence but that resulted in a murder. The parties sharply disagree as to what state of mind must be proved when the felony murder rule is extended to such an aider-and-abettor. The Government, operating on strict liability principles, takes the position that it need only prove Gyamfi's knowing and intentional aiding and abetting of the armed robbery. By contrast, the defense contends that such strict liability is unjustified when it clashes with established principles of aider-and-abettor liability, and that in these circumstances the Government must additionally prove that Gyamfi subjectively recognized a genuine risk that someone would be killed during the robbery. Somewhat surprisingly, the Court's research has not revealed a clear answer to this dispute. Based on background principles of criminal liability, however, and given the Supreme Court's recent guidance on what must be shown to impose criminal liability on an aider-and-abettor, the Court is persuaded that the defense has the better formulation.

    Familiarity with the underlying facts and procedural history of this case is here assumed. As relevant here, Andy Gyamfi is charged with aiding and abetting the attempted robbery of Carlos Vargas, a marijuana dealer who operated from an apartment located at 2466 Marion Avenue in the Bronx ("the Apartment"). The Government alleges that Gyamfi, knowing that drugs and the proceeds of drug sales were stored in the

2

Apartment, engaged with Dwaine Collymore, Warren Lopez, and Victor Perez to rob the Apartment.

Specifically, the Government alleges that late on the evening of April 28, 2016, Gyamfi met with Collymore and Lopez outside 2466 Marion Avenue. Gyamfi then went into the building to wait inside a different unit a floor away from the Apartment. From there, Gyamfi corresponded by phone with Perez (who was already located inside the Apartment, with Vargas and two others) and with Collymore. Eventually, Perez left the Apartment. Soon afterwards Collymore, who was armed with a gun, entered the building with Lopez. Collymore and Lopez forced their way into the Apartment and a melee ensued. Vargas struggled with Collymore, while another inhabitant of the Apartment, Winston Desgouttes, struggled with Lopez and forced him from the Apartment. Collymore fought off Vargas, who fell to the ground. Collymore then stood over Vargas and, using a Taurus gun called "the Judge," fired a single shot into his head, killing him.

Gyamfi is charged, inter alia, with violating 18 U.S.C. § 924(j)(1), which provides for punishment if the defendant "causes the death of a person through the use of a firearm" "in the course of a violation of subsection (c)." In such a case, "the killing is a murder" as defined in 18 U.S.C. § 1111(a), which provides that murder is "the unlawful killing of a human

being with malice aforethought." Section 924(c), as applied to this case, pertains to a person who "uses or carries a firearm" "during and in relation to any crime of violence."[1]

Prior to trial (which is now ongoing), the Government brought a motion in limine requesting that the Court "clarify" that "the felony murder rule applies to [§ 924(j)]." Gov't Motion in Limine 6, ECF No. 93. Specifically, the Government requested a ruling that it "only be required to prove that the defendant intentionally aided and abetted the attempted robbery, and that Vargas was killed during that attempted robbery." Id. at 7. Although the defendant did not immediately respond, eventually, after this case was transferred from Chief Judge McMahon to the undersigned, the Court requested letter briefing from both sides, which was received, see ECF Nos. 129, 130. The Court also received oral argument from the parties on February 14, 2019.

At the outset, the Court notes that the parties are now in agreement that, because § 924(j) incorporates a violation of § 924(c), the Government must at a minimum prove Gyamfi had "foreknowledge that his confederate w[ould] commit the [robbery]

---

[1] Although Gyamfi, in order to preserve the argument for appeal, formally contends that Hobbs Act robbery is not a crime of violence, he concedes this argument is foreclosed in this Court by Second Circuit precedent. See Letter, ECF No. 131; 18 U.S.C. § 924(c)(3)(A); United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018).

4

offense with a firearm." Rosemond v. United States, 572 U.S. 65, 78 (2014).[2] In other words, the Government concedes that it must establish that Gyamfi intended to specifically assist, not just any robbery, but a robbery using a gun. But, in the Government's view, it need do no more; once it establishes that Gyamfi is liable for aiding the underlying armed robbery, he is liable for any consequences of that robbery.

The defense resists this rule, relying largely on its interpretation of Rosemond. In that decision, the Supreme Court noted that the intent of an aider and abettor "must go to the specific and entire crime charged," while "[a]n intent to advance some different or lesser offense is not, or at least not usually, sufficient." Id. at 76. As the defense correctly notes, § 924(c) is a different or lesser offense when compared to § 924(j); a violation of § 924(j) requires a violation of § 924(c) plus death. Accordingly, the defense argues, the defendant's "guilty mind" must be directed, at least to some degree, to that crucial additional element. Only then has the Government shown that the defendant "actively participate[d] in a criminal venture with full knowledge of the circumstances constituting the charged offense." Id. at 77.

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

The Government, in response, notes that § 1111(a) (and therefore § 924(j)) requires neither intent nor knowledge, but only "malice." And malice - a common law term of art - can be supplied in a variety of ways, including "by showing that the killing was committed in the commission of a robbery," because "the malice of the robbery satisfies murder's malice requirement." United States v. Thomas, 34 F.3d 44, 48 (2d Cir. 1994); see also Dean v. United States, 556 U.S. 568, 575 (2009) ("If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder."). Because a principal can be convicted of felony murder based on an accidental killing during a robbery, the Government reasons that any aiders-and-abettors to the robbery can be so punished as well. Similarly, the Government notes that a defendant can be convicted of discharging a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii), even if the discharge was accidental. Dean, 556 U.S. at 577. Since the underlying § 924(c) conviction may be based on accidental conduct, the Government reasons that the § 924(j) conviction may be as well.

The problem with this argument is that it relies on a rule - that the accomplice's mens rea must be whatever is required of the principal, but no more - that does not appear to reflect either the pertinent statutory language or the Supreme Court's pronouncements on the subject. The relevant statute, 18 U.S.C. §

6

2(a), simply provides that any person who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States "is punishable as a principal." That language does not specify what mens rea is necessary. And Rosemond did not tether accomplice liability to the principal's state of mind, as the Government argues should be the rule here. Rather, the Supreme Court stated in broad terms that the accomplice must independently "intend[] to facilitate" "the specific and entire crime charged." Rosemond, 572 U.S. at 76. Straightforward application of that language to this case precludes the Government's formulation.

Moreover, while it might seem odd at first blush to require a stricter showing of scienter for an accomplice than is required of the principal, there are sound reasons to do just that. A principal may be convicted of felony murder based on an accidental killing, but he must still "cause[] the death of a person." 18 U.S.C. § 924(j). Principles of proximate causation therefore operate to limit the scope of criminal liability to those whose acts directly cause death. But an accomplice to the underlying robbery may be quite remote from the ultimate killing. The Government's test would impose murder liability even on defendants who neither caused death, nor subjectively apprehended even the risk of death. See Gov't Request to Charge 46, ECF No. 114 ("The government need not prove that the

7

defendant himself murdered Carlos Vargas <u>or otherwise caused his death</u>.") (emphasis added). That is a result the Court declines to endorse.

Nor does <u>Dean</u> support the Government's position in this case. There, the Supreme Court found relevant that the subsection at issue was written in the passive voice ("if the firearm is brandished"). 556 U.S. at 572. "The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." <u>Id.</u> Section 924(j), in contrast, punishes "[a] person who . . . causes the death of a person." Insofar as the use of the passive voice suggests that scienter is not necessary, use of the active voice suggests that it is. <u>Cf.</u> 18 U.S.C. § 924(c)(5)(B) (punishing the use of armor-piercing ammunition during a drug crime or crime of violence "if death results from the use of such ammunition").

Background principles of criminal liability also weigh against the Government's proposed rule. "The existence of a <u>mens rea</u> is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." <u>Dennis v. United States</u>, 341 U.S. 494, 500 (1951). Accordingly, the Supreme Court has not hesitated to "read a state-of-mind component into an offense even when the statutory definition did not in terms so provide." <u>United States v. U.S. Gypsum Co.</u> 438 U.S. 422, 437

8

(1978). That presumption is at its zenith when the offense at issue is murder, carrying a maximum sentence of death. 18 U.S.C. § 924(j)(1); see Staples v. United States, 511 U.S. 600, 616 (1994) ("Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea."). Thus, holding the defendant liable for aiding and abetting the greater offense of murder, even if he intended only to aid and abet the lesser offense of robbery, would be in significant tension not only with the Supreme Court's pronouncements in Rosemond but with decades, even centuries, of American criminal jurisprudence.

Of course, the presumption against strict liability is just that, a presumption, and Congress is free to override it with plain language. If binding precedent had construed the statutory language to impose totally strict liability upon a robbery accomplice for a death that occurs during the robbery, this Court would faithfully apply that precedent. It does not appear, however, that either the Second Circuit or the Supreme Court have ever held in a precedential opinion that an accomplice to the underlying felony may be convicted of felony murder without any knowledge that there was a risk someone could be killed.

The Second Circuit, admittedly, has cited Thomas, 34 F.3d at 48-49, for the proposition that "the malice of the

9

[underlying] robbery satisfies murder's malice requirement" even as to an aider and abettor. United States v. Rivera, 679 Fed. App'x 51, 55 (2d Cir. 2017) (summary order). But Rivera is not a precedential decision, and even if it were, the Court would conclude that it does not control here. First, Rivera concerned an unpreserved challenge to the factual basis of a guilty plea. Id. at 54. That is a much more limited question than the one presented here, i.e. what the Government must prove to convict in a jury trial. Second, Rivera argued that a § 924(j) guilty plea could not be sustained unless the defendant admitted "that the victim's death was planned in advance of an underlying robbery." Id. at 55. That argument, which would entirely collapse the distinction between felony murder and intentional murder, is much broader than the one raised here. Given the entirely inapposite procedural posture and the nature of the arguments addressed, the Court is not persuaded that Rivera is instructive.[3]

Nor is the Court persuaded by any of the District Court decisions in this Circuit holding that liability for murder automatically attaches to a willing participant in the underlying robbery if a death results. See, e.g., Johnson v.

---

[3] Similarly, United States v. Davis, 491 Fed. App'x 219, 223-24 (2d Cir. 2012), is even less relevant, as there the Second Circuit actually assumed that proof of intent would be necessary for conviction of an aider-and-abettor and simply held that the evidence was sufficient to support that finding.

10

United States, No. 15-cv-3956, 2018 WL 4625799, at *5 (S.D.N.Y. Sept. 26, 2018); United States v. Ashburn, 76 F. Supp. 3d 401, 428 (E.D.N.Y. 2014). Those decisions rely, as the Government does, on the rule that a principal can be held liable for felony murder based on an unintentional killing. As already explained, the Court does not find that reasoning compelling in the case of an aider-and-abettor.

The Government argues that the presumption of mens rea applies only when the law seeks to criminalize otherwise innocent conduct. Cf. Staples, 511 U.S. at 605 (noting that scienter element "require[s] that the defendant know the facts that make his conduct illegal") (emphasis added). On this view, because Gyamfi was allegedly engaged in assisting clearly criminal conduct (a robbery), he is liable for the death that resulted from the robbery even in the absence of any scienter as to that element. The Court agrees that the presumption in favor of scienter is weaker when the underlying conduct is independently illegal, but cannot agree that it disappears entirely, at least in the context of aiding-and-abetting liability. Indeed, Rosemond squarely rejected the proposition that intent to aid only some "lesser offense" would be enough for conviction of aiding and abetting the greater offense, at least in the usual case. 572 U.S. at 76. The question in Rosemond, after all, was whether a defendant's knowledge of a

11

drug crime was enough to make him liable for the use of a gun during that crime. The Court said no. That implies, at least, that Gyamfi's knowledge of the robbery is not enough to make him liable for the murder here.

The Government further argues, however, that Rosemond itself did not require the accomplice to have complete knowledge. In Rosemond, the charge was that a firearm was discharged, not just used, during a drug crime. 572 U.S. at 68. The Supreme Court held only, however, that Rosemond, to be convicted as an accomplice, needed to know that his confederate would be carrying a gun. Id. at 77; id. at 78 & n.9; id. at 81. From this, the Government reasons that an accomplice must know that a gun will be used, but not that there is a genuine risk that it will be fired, and argues that this remains the case whether or not the discharge results in a death.

The Court is not persuaded. For one thing, the Court is skeptical that the Government's fine parsing of Rosemond's language is the best way to read that decision. True, the charge there involved a discharge, while the Court's rule referred only to carrying. But the Court was not asked to decide if an accomplice must know that a gun will be discharged; it was asked to decide whether the accomplice must know beforehand of the gun's presence at all. And the Court spoke in terms that are applicable to § 924(c) generally. See id. at 67 (noting that §

924(c) prohibits "using or carrying a firearm," with no mention of brandishing or discharging, and observing that the question before the Court was "what the Government must show when it accuses a defendant of aiding or abetting that offense"). Although it is possible that the Court's pronouncement of a rule generally applicable to all § 924(c) offenses was intended to reflect a (silent and implicit) determination that the same <u>mens rea</u> applies to all grades of that offense, it is just as plausible, if not more so, that the Court's generalized approach indicates that the Court's attention was not focused on this specific question.

Moreover, even if the Supreme Court did mean to hold definitively that an accomplice need not know that a firearm will be brandished or discharged in order to convict him of aiding and abetting violations of those subsections of 924(c), that would not resolve <u>this</u> case. At most, that would mean that an accomplice must know some fundamental things about the crime – that a gun will be used, for example – but not less important details, such as how the gun will be used. The question then becomes whether the risk of murder is a crucial kind of fact or some minor kind. Common sense alone suggests it is the former.

Further still, what common sense suggests, the statutory structure further confirms. Specifically, the various offenses for carrying, brandishing, or discharging a firearm during a

13

crime of violence are all grouped sequentially in a single list, with increasing associated mandatory minimum sentences. See 18 U.S.C. § 924(c)(1)(A)(i)-(iii). Although they are technically separate offenses, this suggests that Congress understood them to be variations on the same core illegal conduct. In contrast, the murder provision at issue here is listed in an entirely different statutory subsection. See 18 U.S.C. § 924(j). This differs from how Congress treated a similar offense in the very same section. Compare 18 U.S.C. § 924(c)(5)(A) (punishing the use of armor piercing ammunition during a drug crime or crime of violence), with 18 U.S.C. § 924(c)(5)(B) (punishing the use of such ammunition "if death results"). Congress's differing treatment of these various subsections suggests that Congress understood § 924(j) to be an offense that is different in kind, not merely in degree, from violations of § 924(c). And that, in turn, suggests that the accomplice's scienter must extend, at least to some degree, to the feature that distinguishes § 924(j) from § 924(c) - that is to say, the death.

For the foregoing reasons, the Court concludes, first, that it is an open question in this Circuit what mens rea the Government must prove to convict a defendant of felony murder when he is simply an aider-and-abettor of the underlying felony. The Court further concludes that in such circumstances it is appropriate to require proof of some additional mens rea for the

murder, above that required for the underlying robbery. The question then becomes what scienter is appropriate.

The defense rightly does not ask this Court to hold that an accomplice must intend that a person will be killed. Such a rule would remove any distinction between felony murder and intentional murder in the aiding-and-abetting context, a result inconsistent with the statutory design. Rather, the defense argues that the prosecution must prove that Gyamfi subjectively knew, in advance of the attempted robbery, that there was a genuine risk someone would be killed during the robbery. The Court agrees. It is well established that a defendant may be held accountable for the foreseeable harms caused by his unlawful actions. See, e.g., United States v. Gonzalez, 399 Fed. App'x 641, 647 (2d Cir. 2010) (noting that "the requisite malice [for murder] can be found when the assailant acts with awareness of a serious risk of death or serious bodily harm"); United States v. Velasquez, 246 F.3d 204, 214 (2d Cir. 2001) (same); cf. Rosemond, 572 U.S. at 76 n.7 (noting that "[s]ome authorities" support imposing aiding-and-abetting liability "when another crime is the 'natural and probable consequence' of the crime the defendant intended to abet," but expressing no view on the correctness of that rule). If Gyamfi recognized that he was participating in not just an armed robbery, but an armed robbery in which there was a real risk that someone might be

15

killed, he may be held accountable for the fact that a death did, in fact, result, for he "knowingly took part in that more dangerous crime." Rosemond, 572 U.S. at 79.

Of course, the Government is still free to argue to the jury that Gyamfi's knowledge of the risk of death is implicit in his assisting an armed robbery in which, to his knowledge, a gun would be employed. Cf. id. at 78 n.9 (observing that accomplice's intent can be inferred from participation in crime). But it will ultimately be up to the jury to decide whether or not to draw that inference. The defendant is entitled to have the jury find every fact that is essential to his conviction, including his scienter.

For these reasons, the Court intends to instruct the jury that, to convict Gyamfi of aiding and abetting felony murder, the jury must find: (1) that Gyamfi knowingly and intentionally aided the underlying attempted robbery; (2) that, at the time he rendered his aid, Gyamfi knew that a gun would be employed during the attempted robbery; and (3) that, at the time he rendered his aid, Gyamfi knew there was a genuine (and not just fanciful or remote) risk that someone would be killed during the robbery.

SO ORDERED.

Dated:   New York, NY

March 5, 2019

JED S. RAKOFF, U.S.D.J.